IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

FREYA FERRELL                                                                            PLAINTIFF
*On behalf of*
A MINOR CHILD, D.W.C.

vs.                                             Civil No. 6:08-cv-06048

MICHAEL J. ASTRUE                                                                        DEFENDANT
Commissioner, Social Security Administration

## MEMORANDUM OPINION

Freya Ferrell ("Plaintiff") brings this action on behalf of a minor child, D.W.C., and pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying D.W.C.'s's application for Supplemental Security Income ("SSI") under Title XVI of the Act.  The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings.  (Doc. No. 4).[1]  Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

Plaintiff protectively filed an application for SSI on behalf of her son, D.W.C., on March 15, 2005.  (Tr. 11, 50, 53, 75).  Plaintiff alleged D.W.C. was disabled due to ADHD, Ehlers Danlos

---

[1] The docket numbers for this case are referenced by the designation "Doc. No."  The transcript pages for this case are referenced by the designation "Tr."

Syndrome (Type III)[2], arthritis pain, and back aches. (Tr. 79). Plaintiff alleged D.W.C.'s onset date was December 1, 1996. (Tr. 50).

This application was initially denied on July 11, 2005 and was denied again on reconsideration on January 18, 2006. (Tr. 39-42). On March 9, 2006, Plaintiff requested an administrative hearing on this application. (Tr. 37). Specifically, with this request, Plaintiff stated the following: "D. [name redacted] is permanently and totally disabled and has no transferrable skills." (Tr. 37). The administrative hearing was held in Hot Springs, Arkansas on May 31, 2007. (Tr. 314-332). Plaintiff and D.W.C. were present and were represented by counsel, Shannon Carroll, at this hearing. *See id.* Plaintiff and D.W.C. testified at this hearing. *See id.* At the time of this hearing, D.W.C. was fourteen (14) years old and was in the sixth grade in school. (Tr. 316).

On August 6, 2007, the ALJ entered an unfavorable decision denying Plaintiff's request for disability benefits for D.W.C. (Tr. 11-23). In this opinion, the ALJ determined D.W.C. was born on December 2, 1992 and was a school-age child on March 15, 2005, the date his application was filed. (Tr. 14, Finding 1). The ALJ also determined that D.W.C. was an adolescent on the date of his decision. *See id.* The ALJ determined D.W.C. had not engaged in Substantial Gainful Activity ("SGA") at any time relevant to the ALJ's decision. (Tr. 14, Finding 2). The ALJ determined D.W.C. had the following severe impairments: attention deficit disorder, Ehlers Danlos Syndrome, behavior disorder, and back pain. (Tr. 14, Finding 3). The ALJ also determined, however, that D.W.C. did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). (Tr. 14,

---

[2] "Ehlers Danlos Syndrome" is not defined in the record. However, according to *PDR Medical Dictionary,* it is defined as "a group of connective tissue disorders characterized by hyperelasticity and fragility of the skin, hypermobility of the joints, and fragility of the cutaneous blood vessels and sometimes larger arteries due to deficient quality or quantity of collagen . . . . " *PDR Medical Dictionary* 1897 (3rd ed. 2006).

Finding 4).

In this opinion, the ALJ also evaluated D.W.C.'s six domains of functioning and determined that D.W.C. did not have an impairment or combination of impairments that were functionally equivalent to the Listings. (Tr. 14-22, Finding 5). Specifically, the ALJ determined D.W.C. did not have an extreme or marked limitation in any of his six domains of functioning. *See id.* The ALJ determined D.W.C. had no limitation in the following domains: (1) moving about and manipulating objects and (2) caring for himself. (Tr. 20-22). The ALJ also determined D.W.C. had a less than marked limitation in the following domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, and (4) health and physical well-being. (Tr. 17-22).

In making these determinations, the ALJ also evaluated the testimony regarding D.W.C.'s alleged disability. (Tr. 14-17). The ALJ determined these subjective complaints of disability were not credible to the extent alleged. *See id.* The ALJ based this determination upon several different findings: (1) the evidence revealed no functional limitations attributed to Ehlers Danlos Syndrome; (2) testimony disclosed the claimant's academic performance had reportedly improved since his course work was modified; (3) D.W.C.'s teacher acknowledged his behavior was as "good as gold" within the classroom; (4) D.W.C.'s teacher reported he had good attendance; and (5) D.W.C.'s teacher acknowledged his ability to attend and complete tasks was typically no problem. (Tr. 17). Based upon these findings, the ALJ determined D.W.C. was not under a "disability," as defined by the Act, from March 15, 2005, the date the application was filed, through the date of the ALJ's decision or through August 6, 2007. (Tr. 23, Finding 6).

On September 14, 2007, Plaintiff requested that the Appeals Council review the ALJ's

unfavorable disability determination. (Tr. 6-7). On April 19, 2008, the Appeals Council declined to review this determination. (Tr. 3-5). On May 7, 2008, Plaintiff filed the present appeal. (Doc. No. 1). Both parties have filed appeal briefs. (Doc. Nos. 7, 10). The parties consented to the jurisdiction of this Court on May 20, 2008. (Doc. No. 4). This case is now ready for decision.

## 2. Applicable Law:

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

In this case, Plaintiff is seeking disability benefits on behalf of a minor child. On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Public Law No. 104-193, 110 Stat. 2105 (1996) (codified at 42 U.S.C. § 1382c(a)(3)(C)), which provided a more stringent standard for determining eligibility for Title XVI childhood disability benefits than the old law and prior regulations required. *See Rucker v. Apfel*, 141 F.3d

4

1256, 1259 (8th Cir. 1998); 142 Cong. Rec. H8913; H.R. Conf. Rep. No. 725, 104th Cong. 2d Sess. 328 (1996), reprinted in 1996 U.S. Code, Cong. and Ad. News 2649, 2716; Federal Register, Vol. 62, No. 28, p. 6409. Among other things, the new law amended Section 1614(a)(3) of the Act, 42 U.S.C. § 1382c(a)(3), and changed the statutory definition of disability for individuals under age eighteen (18) under the SSI program. Under the new standard, a child is entitled to disability benefits only if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* Pub. L. No. 104-193 § 211(a)(4)(c); 20 C.F.R. § 416.906. The new standard applies to all applicants who filed claims on or after August 22, 1996, or whose claims had not been finally adjudicated by August 22, 1996. Since Plaintiff filed her application in 2005, the new law applies.

Under the new law, the ALJ's disability determination is based upon a three-step analysis. *See* 20 C.F.R. § 416.924.  First, the ALJ must determine whether the minor child has engaged in substantial gainful activity.  If not, the ALJ will proceed to the second step where the ALJ must consider whether the child has a severe impairment.  If a severe impairment is found, the ALJ will proceed to the third step.  At this step, the ALJ, must consider whether the impairment meets, or is medically or functionally equivalent, to a disability listing in the Listing of Impairments ("Listings"), *See* 20 C.F.R. pt. 404, subpt. P, app. 1.  A minor child may be disabled if his or her impairment is functionally equivalent to a disability listing, even if the minor child's impairment does not meet the standard requirements for a disability listing.  *See* 20 C.F.R. § 416.924(d)(1).

A single method is provided for evaluating whether an impairment is "functionally equivalent" to a disability listing, based upon six domains of functioning.  The six domains are the

following: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for himself or herself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). If the minor child claiming benefits has "marked" limitations in two of these domains or an "extreme" limitation in one of these domains, then the child's impairment is functionally equivalent to a disability listing. *See id.* § 416.926a(a); *Moore ex rel. Moore v. Barnhart,* 413 F.3d 718, 721 (8th Cir. 2005).

A "marked" limitation is a limitation that is "more than moderate" and "less than extreme." *See id.* § 416.926a(e); *Lehnartz v. Barnhart,* No. 04-3818, 2005 WL 1767944, at *3 (8th Cir. July 27, 2005). A marked limitation is one that seriously interferes with a child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e). An "extreme" limitation is more than "marked" and exists when a child's impairment(s) interferes very seriously with his or her ability to independently initiate, sustain or complete activities. *See id.* "Extreme" limitation is the rating the Commissioner gives to the most serious limitations. *See id.*

**3. <u>Discussion:</u>**

Plaintiff brings the present appeal claiming the following: (A) substantial evidence does not support the ALJ's determination that D.W.C.'s impairments are not functionally equivalent to the Listings and (B) substantial evidence does not support the ALJ's disability determination. (Doc. No. 7, Pages 2-19). In response, Defendant argues that the ALJ's disability determination is supported by substantial evidence in the record and that the ALJ properly determined D.W.C.'s impairments were not functionally equivalent to a Listing. (Doc. No. 10, Pages 5-14). This Court will address the issues raised with both arguments. However, because Plaintiff essentially makes the same points

with both arguments, this Court need only address the first argument.[3]

Plaintiff claims the ALJ erred by finding D.W.C.'s impairments were not functionally equivalent to the Listings. (Doc. No. 7, Pages 2-19). Specifically, Plaintiff claims D.W.C. has the following limitations: (A) marked or extreme limitation in acquiring and using information,[4] (B) marked or extreme limitation in attending and completing tasks, (C) marked or extreme limitation in interacting and relating with others, (D) no limitation in moving about and manipulating objects, (E) marked limitation in caring for himself, and (F) marked or extreme limitation in health and physical well-being.[5] This Court will address each of these six domains of functioning.

### A.   Acquiring and Using Information

Plaintiff claims D.W.C. has a marked limitation in acquiring and using information. (Doc. No. 7, Pages 7-9). In support of his argument that D.W.C. has this marked limitation, Plaintiff notes that D.W.C. has failed two grades, is currently enrolled in a "special class" that allows for additional time and attention to completing tasks, and suffers from several "obvious" problems, as reported by his fourth grade teacher. *See id.*

However, Plaintiff's argument is flawed in several ways. First, the report cited by Plaintiff,

---

[3] Plaintiff also appears to claim the ALJ improperly found D.W.C. did not meet the requirements of the Listings. (Doc. No. 7, Pages 6-7). However, Plaintiff provided no substantive briefing on this issue. *See id.* Instead, Plaintiff merely listed D.W.C.'s impairments and then stated that those impairments met the requirements of the Listings. *See id.* Because Plaintiff has provided no briefing on this issue, this Court will not address this claim. *Vandenboom v. Barnhart,* 421 F.3d 745, 750 (8th Cir. 2005) (holding "We reject out of hand Vanden-boom's conclusory assertion that the ALJ failed to consider whether he met listings 12.02 or 12.05C because Vandenboom provides no analysis of the relevant law or facts regarding these listings.").

[4] Plaintiff does not specifically state whether she claims D.W.C. has a *marked* or an *extreme* limitation in this domain of functioning. (Doc. No. 7, Pages 2-19). Therefore, this Court assumes Plaintiff is arguing that D.W.C. has either a marked or an extreme limitation in this domain of functioning. *See id.*

[5] Plaintiff does not specifically state whether she claims D.W.C. has a *marked* or an *extreme* limitation in this domain of functioning. (Doc. No. 7, Pages 2-19). Therefore, this Court assumes Plaintiff is arguing that D.W.C. has either a marked or an extreme limitation in this domain of functioning. *See id.*

stating that D.W.C. suffers from several "obvious" problems, does not support Plaintiff's claimed limitations. Instead, this report states that D.W.C. "is extremely messy and disorganized" but *"[w]hen he focuses on the task and is motivated to do it, he does a good job."* (Tr. 87) (emphasis added). Accordingly, this report suggests that Plaintiff's limitations are a matter of *motivation* and are not a matter of *ability*. Second, there is no indication that D.W.C.'s claimed limitations in acquiring and using information persisted after he was transferred to the Title I (special education) classes while in the sixth grade. D.W.C. testified that his grades improved from Ds and Fs to Bs and Cs after he was transferred to those classes in the sixth grade. This teacher's report reflects D.W.C.'s behavior while he was in the fourth grade. Therefore, there is no indication that this report reflects D.W.C.'s *current* limitations. (Tr. 87). Accordingly, this Court finds Plaintiff did not meet her burden of establishing that D.W.C. suffers from a marked or extreme limitation in this domain of functioning.

      **B.**      **Attending and Completing Tasks**

Plaintiff claims D.W.C. has a marked or extreme limitation in this domain of functioning. (Doc. No. 7, Pages 9-10). In support of this claim, Plaintiff relied upon the report referenced above by D.W.C.'s fourth grade teacher. *See id.* However, for the reasons listed above, this Court does not adopt those findings. Furthermore, the testing by Dr. Charles M. Spellmann, Ph.D. supports a finding that D.W.C. does not suffer from a marked or an extreme limitation in this domain of functioning. Specifically, even though he noted that D.W.C. had previously been treated for ADHD, Dr. Spellman stated that he thought D.W.C.'s concentration, persistence, and pace were good based upon his review and testing. (Tr. 115-116). Thus, this Court finds Plaintiff did not meet her burden of establishing D.W.C. suffers from a marked or extreme limitation in this domain of functioning.

      **C.**      **Interacting and Relating with Others**

Plaintiff claims D.W.C. has a marked or extreme limitation in this domain of functioning. (Doc. No. 7, Pages 10-14). In support of this claim, Plaintiff references D.W.C.'s treatment records from Living Hope for disciplinary problems. *See id.* These records date from 1992 until 2007. *See id.* These reflect that D.W.C. does has disciplinary problems at school. (Tr. 118-174). However, even if these reports are accepted as entirely credible, they do not establish that D.W.C. suffers from anything greater than a *marked* limitation in interacting and relating with others. *See* 20 C.F.R. § 416.926a(e) (requiring that an "extreme" limitation interfere "very seriously" with the claimant's ability to independently initiate, sustain, or complete activities). The fact that D.W.C. is able to attend school with other children and is able to maintain Bs and Cs leads this Court to find that D.W.C. does not have an "extreme" limitation in this domain of functioning.

Furthermore, even if this Court found such a *marked* limitation, Plaintiff still has not established D.W.C. is disabled due to his impairments. *See* 20 C.F.R. § 416.926a(a) (requiring a claimant to establish a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain of functioning). Therefore, Plaintiff has not met her burden of establishing that D.W.C.'s impairments are functionally equivalent to the Listings and that D.W.C. is disabled.

**D.     Moving About and Manipulating Objects**

Plaintiff does not claim that D.W.C. has any limitations in this domain of functioning. (Doc. No. 7, Page 14). Therefore, this Court will not address this issue.

**E.     Caring for Himself**

Plaintiff claims D.W.C. has a marked limitation in this domain of functioning. (Doc. No. 7, Pages 15). Specifically, Plaintiff claims D.W.C. "does not deal with change" and that "[a]ny stressors in Plaintiff's [sic] life causes him to have a negative, disruptive and volatile reaction." *See id.* Plaintiff relies upon D.W.C.'s counseling records in support of his claim that D.W.C. has a

marked limitation in this domain of functioning. *See id.* In response to this claim, Defendant argues that the findings from Dr. Spellman's consultative examination and other evidence in the record provide substantial evidence supporting the ALJ's determination on this issue. (Doc. No. 10, Pages 12-13).

In assessing a child's alleged disability, this domain of "caring for onself" requires consideration of how well that child can maintain his emotional and physical health, including an ability to fulfill wants and needs, as well as cope with stress and change. *See* 20 C.F.R. § 416.926a(k). As noted by Defendant, Dr. Spellman's report establishes that D.W.C. is fairly well able to care for himself. (Tr. 115-117). Dr. Spellman reported that D.W.C. has "all self-help skills," "helps around the house," "cleans the kitchen, does his own laundry, cleans his own room and helps one of his sisters clean her room as well as his own bathroom," "can cook noodles, hotdogs, eggs, and a few simple dishes like that," and "knows how to go shopping and enjoys doing that when he has money." *See id.* Plaintiff also testified that D.W.C. is able to assist with the household chores, including doing dishes by hand, doing laundry, and helping with his younger siblings. (Tr. 322). These findings are consistent with the ALJ's determination that D.W.C. does not have a marked limitation in this domain of functioning and provide substantial evidence for the ALJ's determination on this issue.

### F. Health and Physical Well-Being

Plaintiff claims D.W.C. has a marked or extreme limitation in health and physical well-being. (Doc. No. 7, Pages 15-20). Plaintiff claims D.W.C.'s limitations result from several different impairments, including his ADHD, ODD, and Ehlers Danlos Syndrome. *See id.* Plaintiff claims D.W.C.'s Ehlers Danlos Syndrome causes him to have "paper thin skin, joint laxity and pain." *See id.* In support of her argument, Plaintiff cites to D.W.C.'s medical records from Arkansas Children's

Hospital wherein D.W.C.'s doctor discussed D.W.C.'s future limitations due to his Ehlers Danlos Syndrome. *See id.* Specifically, this record reflects that D.W.C.'s doctor believed D.W.C. may later have job restrictions due to his Ehlers Danlos Syndrome:

> At this visit, I also reminded Dennis and his mother that it is not a good idea for him to be doing "tricks" with his joints. It is thought that perhaps performing such unusual postures with the joints may lead to more arthritic symptoms with time. We also discussed the fact that it may be worthwhile in the future for Dennis to consider occupations that would not cause excessive trauma to his joints or would not require standing all of the time. Back pain has been somewhat more common in persons with joint laxity.

(Tr. 109).

In response, Defendant argues Plaintiff has very little support for D.W.C.'s claimed limitations. (Doc. No. 10, Pages 13). Defendant argues that Plaintiff's support for these alleged limitations is based almost entirely upon her testimony, which the ALJ properly found was not credible. *See id.*

This Court finds the ALJ properly found D.W.C. had a less than marked limitation in this domain of functioning. Apart from Plaintiff's testimony, the record provides no evidence supporting the level of limitation alleged. The ALJ properly discounted this testimony as not being entirely credible.[6] In fact, D.W.C.'s medical records state that his only physical impairment is Ehlers Danlos Syndrome. (Tr. 109). This impairment, however, is considered "benign hypermobility type." *See id.* (Tr. 320). D.W.C.'s medical records also reflect no functional restrictions due to this syndrome. In fact, as noted above, Dr. Mary Curtis, M.D. of Arkansas Children's Hospital only found D.W.C. would have a few work restrictions when he began working due to these impairments. Accordingly,

---

[6] Plaintiff has not raised the issue of whether the ALJ conducted a proper *Polaski* analysis. Therefore, that issue will not be further addressed in this opinion. However, after reviewing this opinion, even if Plaintiff had properly raised this issue, this Court finds the ALJ fully and properly analyzed D.W.C.'s and Plaintiff's subjective complaints and complied with the requirements of *Polaski*.

11

this Court finds the ALJ's determination on this domain of function is supported by substantial evidence and should be affirmed.

**4. Conclusion:**

Based upon the foregoing, this Court finds that the ALJ's determination, that D.W.C.'s impairments do not meet and are not medically or functionally equivalent to a Listing, is supported by substantial evidence in the record and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 19th day of June, 2009.**

                                                   /s/   Barry A. Bryant
                                                 HON. BARRY A. BRYANT
                                                 U.S. MAGISTRATE JUDGE